**In the United States Bankruptcy Court
For the Eastern District of Pennsylvania**

```
In re James C. Escher          : Chapter 13
                               :
                               :
                  Debtor(s)    : Bankruptcy No. 05-31711 SR
                               :
                               :
James C. Escher and Viola Escher :
                               :
              Plaintiffs        :
                               :
          v.                   :
                               :
Decision One Mortgage Company, LLC :
Mortgage Electronic Registration :
Systems, Inc., Countrywide Home :
Loans, Inc., and Mortgage      :
Management Specialists         :
                               :
              Defendants       :
                               :
          v.                   :
                               :
Thomas H. Baker, P.C. t/a      :
Lawyers Land Services          :
                               :
      Third-Party Defendant    :
                               : Adversary No. 05-607
```

# <u>Opinion</u>

By: Stephen Raslavich, United States Bankruptcy Judge.

**<u>Introduction</u>**.

Before the Court is Plaintiffs' Motion for Permission to
Amend Complaint.  The Motion is opposed by the Defendants
Decision One Mortgage Company (Decision) and Countrywide Home
Loans, Inc. (Countrywide)  After a hearing held on August 1,

2007, the Court took the matter under advisement. While certain factors wight in favor of allowing the amendment as proposed, ultimately, the Plaintiffs' dilatory conduct and questionable tactics dictate that as to Countrywide, Decision, Mortgage Electronic Registration Systems, Inc. (MERS), and Bank of New York (BONY), the request must be denied.[1]

*Procedural Background*

Plaintiffs filed suit against Decision, Countrywide, MERS and Mortgage Management Specialists (MMS). The Complaint alleged violations of federal and state consumer lending law. Decision, Countrywide and MERS filed motions for summary judgment. Those motions were granted. The Plaintiffs now seek to amend their complaint to add one defendant, recharacterize another, and to press new as well as old, dismissed claims against Decision, Countrywide, and MERS.

*Changes to the Complaint*

The Court begins with an analysis of the Complaint as amended. The original Complaint pleaded four counts: TILA[2],

---

[1] Because the underlying Complaint seeks to avoid a secured interest in the Debtor's property (i.e., rescission of the mortgage loan, it is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(K). That subparagraph includes among core proceedings "determinations of the validity, extent, or priority of liens."

[2] Truth in Lending Act, 15 U.S.C. § 1601 et seq.

RESPA[3], CSA/LBTPR[4] and UDAP.[5]  To the extent these claims sought relief against either Decision, Countrywide or MERS, all were dismissed on summary judgment.  Despite that ruling, each of those counts reappears in the amendment and—with a slight exception—is directed at the same parties who prevailed on summary judgment as well as a new one, Bank of New York.[6]

Most of the amendments are found in Count I (the TILA claim).  That claim was originally based on three closing costs which Plaintiffs alleged should have been disclosed as part of the finance charge: a mortgage broker's commission (a "yield spread premium"), a charge for title insurance, and the fee for a notary.  *See* Complaint, ¶ 7.  Despite the summary judgment, the new Count I continues to allege that the same *three* fees are TILA violations.  And of the three, only one is changed; the other two reappear exactly as they did in the original pleading.  This is especially surprising considering that the notary fee claim was

---

[3]Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.

[4]Credit Services Act, 73 P.S. §2181 et seq and Loan Brokers Trade Practices Regulation, 37 Pa.Code §305.1 et seq.

[5]Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq.

[6]The addition of BONY comes as no surprise.  The issue of who is the present holder was a source of confusion attributable in considerable degree to the Defendants.  It required the Court to schedule a separate hearing on that question alone.  *See* Transcript dated 5/10/07.  The Defendants eventually reached a stipulation—agreed to by the Plaintiffs—which identified BONY as the present holder.  *See* Stipulation 5/9/07 and Letter of Plaintiffs' counsel dated 5/11/07.

expressly abandoned at summary judgment.  Aside from what is old
in the first count, what is new are the three charges first
identified in Plaintiffs' response to the motions for summary
judgment.  *See* Amended Complaint, ¶ 12 (alleging that fees of $25
for document preparation, $40 for tax certification, and $55 for
 tax service fee should have been disclosed as part of finance
charge)

As to the remaining counts, little else is changed.  Count
II (the RESPA claim) shares a characteristic with the claim that
the notary fees violated TILA: it, too, was abandoned by the
Plaintiffs at summary judgment.  Inexplicably, it reappears in
the amendment unchanged.  Count III (the Pennsylvania Credit
Services and Loan Brokers Trade Practices claims) is now limited
to MMS, the mortgage broker,[7] whom the amendment re-identifies as
"Steve Honowitz t/a Mortgage Management Systems, Inc." *See*
Amended Complaint, ¶ 4.  However, Count IV (UDAP), a claim which
is wholly derivative of the causes of action in Count III,
continues to be asserted against Decision based on nothing more
than a slight change in wording.

*Applicable Rule of Procedure*

Amendment of pleadings is governed by Fed. R.Bankr.P. 7015,
which incorporates Fed.R.Civ.P. 15.  The rule provides, in

---

[7]Originally, it was brought against all of the Defendants.  *See*
Complaint

4

pertinent part:

> (a) Amendments. A party may amend the party's
> pleading once as a matter of course at any
> time before a responsive pleading is served
> or, if the pleading is one to which no
> responsive pleading is permitted and the
> action has not been placed upon the trial
> calendar, the party may so amend it at any
> time within 20 days after it is served.
> *Otherwise a party may amend the party's
> pleading only by leave of court* or by written
> consent of the adverse party; and *leave shall
> be freely given when justice so requires.*

Fed.R.Civ.P. 15(a) (emphasis added).  The Supreme Court has made

it clear that the application of this presumption is "a mandate

to be heeded."  *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227,

230, 9 L.Ed.2d 222 (1962).  It furthers the policy of trying

cases on their merits.  *Id.*  It also avoids that possibility of

the opposing party suffering prejudice or surprise.  6 Wright

Miller & Kane, *Federal Practice and Procedure*: Civil 2d, § 1474.

The precise delineation of when leave should be granted or denied

is impossible; therefore, the determination is left to the sound

discretion of the trial judge.  *NAACP v. Harrison*, 907 F.2d 1408,

1417 (3d Cir.1990).

*Burden of Proof*

    Both parties advert to a threshold question: the effect of

the Court's summary judgment ruling on the burden of proof.  In

anticipation of what the Defendants would argue, Plaintiffs point

out that the summary judgment is interlocutory.  *See* Motion, ¶ 3;

Transcript (T-) 4.  This matters, Plaintiffs explain, because the

otherwise liberal standard for leave to amend does not apply post-judgment.  As it turns out, that is a premise shared by the Defendants: first, they argue that the Plaintiffs have failed to move for *relief from judgment* under Bankruptcy Rules 9023 or 9024; and second, that Plaintiffs have failed to meet the very high standard applicable to request for leave to amend *after entry of judgment*.  Decision Brief, 3,4.  For its part, Countrywide adds two arguments of its own: that it cannot be liable because it is a good-faith assignee; and that any rescission claim against the present holder has expired.

*Is the June 12 Ruling
Interlocutory or Final?*

The Court takes up first the Plaintiffs' threshold contention that the June 12 ruling is interlocutory.  If Plaintiffs are correct, then Decision has mis-stated the applicable presumptions: while it is well-settled that when judgment has been entered, the presumption favoring liberal amendments is reversed after entry of judgment (*see, e.g., Werner v. Werner*, 267 F.3d 288, 296 (3d Cir.2001)), that rule is premised on the judgment in question being *final*.  3 *Moore's Federal Practice*, ¶ 15.14[4] (1999) ("After *final* judgment and on appeal, amendments may be possible, but the pleader's burden increases. Subsequent leave to amend will be granted "sparingly" and only if justice requires.")  The Court must first determine whether the summary judgment is final.

*Finality In Bankruptcy*

A final judgment has been defined by the courts as one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633, 89 L. Ed. 911 (1945) (decision ending litigation on merits, leaving court to execute judgment, is final); *accord Coopers & Lybrand v. Livesay*, 437 U.S. 463, 466, 98 S. Ct. 2454, 2457, 57 L. Ed. 2d 351 (1978) (court ruling that makes further litigation improbable is considered final); *accord Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1580 (Fed. Cir. 1994), *cert. denied*, 513 U.S. 1018 (1994) (judgment ending litigation is considered final). *See Newfound Management Corp. v. Lewis*, 131 F.3d 108,112 (3d Cir.1997) ("If the order adjudicates the claim fully so that the court's only remaining task is to execute on the judgment, then the order will be considered final as to that particular claim within the multi-claim action.") Is this analysis any different in bankruptcy?

The Third Circuit has explained that where bankruptcy is concerned, the concept of "finality for purposes of appellate jurisdiction should be viewed 'functionally'." *In re Amatex*, 755 F.2d 1034, 1039 (3d Cir.1985) This is because bankruptcy proceedings are often protracted, and time and resources can be wasted if an appeal is delayed until after a final disposition;

therefore, the policy has been to quickly resolve issues central to the progress of a bankruptcy. *See In re Owens Corning,* 419 F.3d 195, 203 (3d Cir.2005). A court must consider four factors to determine whether a decision in a bankruptcy case is final: (1) the impact on the assets of the bankruptcy estate; (2) the need for further fact-finding on remand; (3) the preclusive effect of a decision on the merits; and (4) the interests of judicial economy. *In re Armstrong World Industries*, 432 F.3d 507, 511 (3d Cir.2005); *see also In re Marin Motor Oil,* 689 F.2d 445, 448 (3d Cir.1982) (order granting petition to intervene deemed final for purposes of appeal); In re Amatex, 755 F.2d at 1041 (denial of request for appointment of creditor class for future asbestos claimants deemed final for appeal purposes); *In re Christian,* 804 F.2d 46, 48 (3d Cir.1986) (order denying motion to dismiss bankruptcy case final); *In re Wheeling Pittsburgh Steel Corp*, 836 F.2d 153, 158 (3d Cir. 1987) (district court's stay of bankruptcy pending PUC completion of process granting company permission to abandon operation as "common carrier" deemed final for purposes of appeal); *In re Pruitt*, 910 F.2d 1160, 1166 (3d Cir. 1990) (order withdrawing reference lacks finality for purposes of appeal); *In re Marvel Entertainment, supra*, 140 F.3d 463, 470-71 (3d Cir. 1998) (order denying appointment of trustee's firm as counsel deemed final for purposes of appeal)

8

*Finality in Adversary Proceedings*

Where the ruling is made in the context of an adversary proceeding, "it is generally the particular adversary proceeding or controversy that the court must have finally resolved, rather than the entire bankruptcy, for a decision to be final." *In re Oglesby*, 158 B.R. 602, 604 (E.D.Pa.1993); *see also In re Hillsborough Holding Corp.*, 116 F.3d 1391, 1393 (11th Cir. 1997) ("any order within a bankruptcy case which concludes a particular adversary proceeding should be deemed final and reviewable"); *see also In re Meyertech*, 831 F.2d 410, 414 (3d Cir.1985) (finding damages ruling in favor of debtor final for purposes of appeal notwithstanding partial remand to clarify amount of setoff). Where the ruling in question is a summary judgment, the determination of finality depends on whether the ruling disposed of the entire matter or a discrete portion of it. *See Brae Asset Fund v. Kelly (In re Kelly)* 223 B.R. 50, 55 (Bankr.D.Mass.1998) ("The determination as to which kind of ruling a ruling is in a particular instance depends on whether the summary "judgment" was indeed a final judgment of the entire adversary proceeding in which it was made, or at least of an identifiable part of the proceeding as to which a separate final judgment or other appealable order may be made."); *see also Creditors Committee v. Industrial Ceramics Assoc.*(*In re Industrial Ceramics, Inc.*), 252 B.R. 296, 301 (W.D.N.Y.2000)(holding that partial summary

judgment in adversary proceeding disposing of only one of two pending claim is interlocutory)  A partial summary judgment which has been certified as final under Rule 54(b) will be appealable. *See Clark v. First State Bank (In re White Beauty View, Inc.)*, 841 F.2d 524, 526 (3d Cir.1988)(holding that summary judgment as to one of several claims not final without Rule 54(b) certification).

The summary judgment ruling cannot be said to conclude the litigation because it did not dispose of all of the claims. Still pending is the claim against the mortgage broker.  *See* Amended Complaint, Count III.  That claim is brought under the Pennsylvania Credit Services Act and the Loan Broker Trade Practices Regulation and is being defended: counsel for the broker appears of record and an answer has been filed.  *See* docket, #48.  However, the broker did not join in the motion for summary judgment.  Moreover, neither Countrywide nor Decision moved to certify the summary judgment as a partial final judgment under F.R.C.P. 54(b).[8]  Under these circumstances, then, disposition on the remaining claims must occur before the summary judgment may be considered final.  *See* 19 *Moore's Federal*

---

[8]Rule 54(b) is made applicable to adversary proceedings by B.R. 7054(a) and provides that "[w]hen more than one claim for relief is presented in an action, …, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

*Practice - Civil* § 202.03 (listing policy reasons for finality
rule, e.g., judicial economy, deference to District Court,
presumption of soundness of trial court ruling).  The corollary
to this is that Plaintiffs were not required to move to alter or
amend the judgment pursuant to Rules 59(e) or 60(b).  *See Dayoub
v. Penn-Del Directory Co.*, 90 F.Supp.2d 636, 637 (E.D.Pa.2000).
As a result, the proposed amendment continues to enjoy the
presumption of legitimacy.  It is up to the Defendants to
demonstrate otherwise.

*Standard for
Leave to Amend*

In determining whether it would be just to grant the
amendment, the Court must consider the position of *both*
parties and the effect that the request will have on them.
Wright Miller & Kane, *supra* at § 1487 (emphasis added).  For that
reason, the court may deny a request to amend when the moving
party has demonstrated undue delay, bad faith or dilatory motive
or where the amendment would prejudice the opposing party.  *See
Foman, supra, id.*; *Grayson v. Mayview State Hosp.*, 293 F.3d 103,
108 (3d Cir.2002)  Equally, an amendment will be denied where it
is futile.  *Id.*  The Defendants maintain that the request to
amend is guilty of all of these things.  *See generally*
Defendants' Briefs.

*Prejudice*

The Court begins with an analysis of how the amendment would

11

affect the Defendants.  Both Defendants claim that they would be
prejudiced if leave were granted.  The Third Circuit has
emphasized that prejudice to the non-moving party is the
touchstone for the denial of an amendment.  *Arthur v. Maersk,
Inc.*, 434 F.3d 196, 204 (3d Cir.2006)  That being said, the non-
moving party cannot merely claim prejudice, but "must show that
it was unfairly disadvantaged or deprived of the opportunity to
present facts or evidence which it would have offered had the ...
amendments been timely." *Bechtel v. Robinson,* 886 F.2d 644, 652
(3d Cir.1989) (citations omitted).  In other words, the
Defendants bear the burden of proof as to prejudice*.  See AMS
Construction Co. v. Reliance Insurance Co.*, 2006 WL 1967336 *3
(E.D.Pa.)   Decision contends that it will be harmed if it has to
"relitigate issues fully and finally resolved."  Decision Brief,
8.  Countrywide points to the inevitable reopening of discovery
that would follow amendment.  Countrywide Brief, 6.  Does either
ground constitute prejudice?

     The Court begins with Decision's finality argument.  The
Court agrees that it would be unfair to require it to defend yet
again the yield spread premium and title insurance claims.  Those
claims were fully vetted and, more to the point, the amendment
does nothing more than make self-serving, cosmetic changes as to
the title insurance claim.  For example, it is now alleged that
Plaintiffs obtained a prior mortgage loan in September 2001; that

the previous lender is alleged to have required title insurance; that the loan made by Decision encumbered the same property as did the previous loan; that there was no change in fee simple ownership; and that Decision knew of the existence of title insurance from the previous loan. *See* Amended Complaint, ¶¶ 5 - 7. Each and every one of these changes is intended to cure the evidentiary shortcomings that resulted in the adverse judgment. However, in order to have survived summary judgment, they were required *at that time* to have offered *some proof* on those points. They did not. For that matter, neither is any evidence offered now; all that is offered is pleadings, as opposed to proofs. It is manifestly unfair to allow re-litigation of those claims at this juncture.

The same however, cannot be said as to the three new alleged TILA violations. They were *not* adjudicated at summary judgment so Defendants would not lose the benefit a favorable ruling. But they would, as Countrywide complains, likely have to undertake additional discovery. In this district, courts differ as to whether additional discovery made necessary after an amendment constitutes prejudice. *Compare Kuhn v. Phila. Elec.Co.*, 85 F.R.D. 86, 88(E.D.Pa.1979) (denying leave to amend when discovery had already been completed and amendment would require additional discovery); *Cummings v. City of Philadelphia*, 2004 WL 906259 *4 (E.D.Pa.) (stating "substantial or undue prejudice has been found

and the amendment denied where the amendment would have asserted
new claims, where new discovery would have been necessary, where
the motion for leave was filed months after the factual basis for
the amendment was discovered by the moving party, and where the
motion for leave was brought after summary judgment motions were
filed") *with Dole v. Arco Chem. Co.,* 921 F.2d 484, 488 (3d Cir.
1990) (holding that the party opposing amendment had not
demonstrate sufficient prejudice by pointing to redrafting a
motion for summary judgment along with possible need to conduct
additional discovery) and *Amquip Corp v. Admiral Ins. Co.*, 231
F.R.D. 197, 201 (E.D.Pa.2005) (reasoning that any prejudice would
be remedied by allowing additional discovery).  Countrywide
explains that it will have to take new depositions to investigate
the new claims.  *See* Countrywide Brief, 6.  While that may be so,
that does not necessarily mean that it will be protracted or
burdensome.  If it does, however, then fee-shifting may be
appropriate.  For those reasons, the Court does not find that the
new TILA claims in ¶ 12 of the amendment unduly prejudice the
Defendants.

*Delay and Motive*

The analysis, however, also inquires as to the movant's
intentions.  Most significant here is the timing of the request
for leave.  It occurs after entry of a summary judgment ruling.
Delay, in and of itself, does not require that a motion to amend

14

a complaint be denied; however, at some point, the delay will become 'undue' placing an unwarranted burden on the court and may work prejudice to the adversary." *See Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir.2001) When a party filing a motion for leave has no explanation for the delay, untimeliness can be a sufficient reason to deny the request. *Cureton, supra*, 2000 WL 388722 *2 (E.D.Pa.). Why have the Plaintiffs' waited until after the summary judgment ruling to amend? It cannot be ignorance of the claim, because the record indisputably shows that both the old and new TILA claims were known to Plaintiffs when they responded to Defendants' summary judgment motions. Indeed, the new claims derive from the same documentary evidence as did their old claims; it is fair to say that the Plaintiffs should have known of the proposed claim at the inception of this litigation. So at a minimum, the request to amend should have been made no later than the date they responded to the summary judgment motion. If it had, then pretrial scheduling could have been reset to extend discovery as to these claims. That would have avoided a significant waste of judicial resources. Instead, Plaintiffs *misrepresented* to the Court when Defendants had knowledge of these new claims. At the summary judgment hearing, Plaintiffs represented that Defendants were apprised of such claims before the end of discovery as if that somehow cured the deficiency. *See* Opinion, 23-24. That

15

statement was demonstrated to be false and Plaintiffs' counsel
would admit the same in writing a few days later.  *See* Letter
dated 4/6/07.  That, however, did not prompt Plaintiffs to
request leave to amend then.  Instead, they waited for this Court
to rule on the pleaded claims.  When the ruling went against
them, Plaintiffs then sprung into action proposing an amendment.
What explanation do Plaintiffs' offer as to why they waited until
after the judgment to amend?

*Stated Purpose of
the Amendment*

     According to their motion, the proposed amendment "includes
all of the amendments necessary to address all of the issues
raised in the Opinion."  Motion, ¶ 4.  In the same vein,
Plaintiffs' counsel reiterated at the hearing that the amendment
is sought at the  "suggestion" of the Court in order to "clean
up" the Complaint.  *See id.*; *see also* T-5.  Whatever counsel's
understanding may have been, nothing of the sort was expressed in
the Opinion.  In the Opinion, the Court explained that at that
juncture in the case (summary judgment), the Plaintiffs could not
make new allegations without following Rule 15.  *See* Opinion, 25;
*see also* T-5.  It made no statement as to Plaintiffs' entitlement
to amend their Complaint or whether that was advisable.  To have
done so would have been an improper advisory ruling.  The
Plaintiffs' decision to seek leave to amend was theirs to make
and will be judged as such.  This purported explanation is

16

completely without basis and, therefore, the Court must look elsewhere to determine Plaintiffs' intentions.

*Substance of*
*the Amendment*

Aside from Plaintiffs' conduct, what in the proposed pleading reflects on the Plaintiffs' bona fides?  The Court notes that the changes involve much more than just the three new TILA claims.  The amendment would retain each of the claims which were disposed of on summary judgment: the yield spread premium and title insurance claims as well the Credit Services Act charge against Decision.  All are shoe-horned into the proposed pleading along with the new matter.  This is done under the guise of "cleaning up" the Complaint.  Even worse, they replead two claims expressly abandoned at summary judgment: the RESPA count and the claim for excessive notary fees.  *Compare* Complaint ¶ 7 and Amended Complaint, ¶ 11; Count II.  In their response to the summary judgment motions, the Plaintiffs stated without reservation that "they are no longer pressing any RESPA claims" and conceded that "Decision made a sufficient showing that the notary fee was not excessive given the number of notarizations affixed by the notary."  Plaintiff's Brief, 2, 12.  Now, however, both claims reappear verbatim in the proposed amendment and without an explanation as to why.  *See* Amended Complaint attached to Motion for Leave to Amend.  *See also Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir.1986) (defining bad faith as "intentional

17

advancement of a baseless contention that is made for an ulterior
purpose, e.g., harassment or delay.")

From all of this, the Court draws unfavorable inferences as
to what Plaintiffs' motives were.  Every time they are pressed
for an explanation for their delay, Plaintiffs' point the finger
elsewhere: either Defendants already knew of the new claims or it
was the Court who told them to amend when they did.  The record
flatly contradicts both assertions.  The fairest inference is
that this is not an instance of oversight.  Neither is it a
matter of conforming the pleadings to the proof.  Rather, the
Plaintiffs' request appears more in the way of a deliberately
calculated strategy of wearing down the Defendant through
attrition.  One Court has explained why this practice is so
objectionable:

> A busy district court need not allow itself
> to be imposed upon by the presentation of
> theories seriatim. Liberality in amendment is
> important to assure a party a fair
> opportunity to present his claims and
> defenses, but equal attention should be given
> to the proposition that there must be an end
> finally to a particular litigation.... Much
> of the value of summary judgment procedure in
> the cases for which it is appropriate ...
> would be dissipated if a party were free to
> rely on one theory in an attempt to defeat a
> motion for summary judgment and then, should
> that theory prove unsound, come back along
> thereafter and fight on the basis of some
> other theory. [citations omitted].
>
> This wariness is heightened when the losing
> party seeks the amendment many months after
> his initial filing, the amendment is not

> based on new evidence, and the amendment is
> merely the presentation of an alternate legal
> theory that was readily available prior to
> the entry of summary judgment. *Id.*

*Combs v. PriceWaterHouse Coopers, LLP*, 382 F.3d 1196, 1205-06

(10th Cir.2004) That appears clearly to be exactly what the

Plaintiffs are trying to do here.  This amendment comes close to

two years after the original filing.  It is not based on new

evidence; in fact, the newly raised claims derive from the same

evidence, the closing documentation.  Justice would not be served

by sanctioning such tactics and allowing the TILA count to be

amended at this late date.

*Futility and the
Request to Add BONY*

There is a crucial corollary to this finding.  If the TILA

claim may not be amended, then it remains dismissed pursuant to

the summary judgment.  That claim, however, is sole charge which

the amendment levels against BONY, the defendant sought to be

added here.  If that count has been dismissed, then the amendment

to add BONY would be futile.  *See In re Burlington Coat Factory

Securities Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997)(explaining

that an amendment is futile if it would not survive a motion to

dismiss for failure to state a claim upon which relief could be

granted).  Accordingly, Plaintiffs' request to amend to add BONY

must be denied.

*Futility of the
Proposed Count IV*

19

There is yet another amendment to the complaint which the
Court finds to be futile.  As proposed, Count IV (UDAP) is
directed at Decision as well as MMS.[9]  That count was derivative
of Count III[10] which, in turn, was dismissed against Decision (as
well as the other moving defendants) on summary judgment.  The
CSA claim failed because there was no evidence that Decision was
a "credit services organization" as required by the CSA.  *See*
Opinion, 28.  Notwithstanding, the same claim reappears against
Decision with only a slight change in wording.  More to the
point, the added language never attributes to Decision the
requisite actor status, i.e., that it is a "credit services
organization."  Even as amended, then, Count IV fails to state a
claim against Decision.  For that reason, Plaintiffs will not be
granted leave to amend Count IV to include Decision.  Any
amendment will be limited to MMS.

*Summary*

Leave to amend will be granted in limited part but denied in
large part.  Plaintiffs' request to recharacterize the mortgage
broker (MMS) will be granted.  Counts I and II may not be
amended, but remain dismissed pursuant to the summary judgment

---

[9]Originally, it was brought against all of the Defendants.  *See*
Complaint, Count IV.

[10]To be specific, Count IV alleged a UDAP claim by virtue of the
Defendants having violated the Credit Services Act as alleged in Count
III.

20

ruling.   Count III may be amended as proposed.   Finally, Count IV

may not be amended to include any defendant other than MMS.

An appropriate Order follows.


By the Court:


_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   September 28, 2007

## In the United States Bankruptcy Court
## For the Eastern District of Pennsylvania

```
In re James C. Escher          : Chapter 13
                               :
                               :
                Debtor(s)      : Bankruptcy No. 05-31711 SR
_____:
                               :
James C. Escher and Viola Escher :
                               :
                Plaintiffs     :
                               :
            v.                 :
                               :
Decision One Mortgage Company, LLC :
Mortgage Electronic Registration :
Systems, Inc., Countrywide Home :
Loans, Inc., and Mortgage      :
Management Specialists         :
                               :
                Defendants     : Adversary No. 05-607
_____:
```

# <u>Order</u>

**And now**, upon consideration of the Plaintiffs Motion for Permission to Amend Complaint, the Responses of Decision One Mortgage Company, LLC, and Countrywide Home Loans, Inc., after hearing held on August 1, 2007, after submission of briefs, and for the reasons set forth in the attached Opinion, it is hereby:

**Ordered**, that the Motion is granted in part and denied in part. Plaintiffs' request is denied to the extent it seeks to press claims against either Decision, Countrywide, MERS, or Bank of New York. The request to amend is otherwise allowed; and it is

**Further Ordered,** that Plaintiffs may file an amended

complaint consistent with the attached Opinion, but must do so

within fifteen (15) days of the entry of this Order.

By the Court:

_____
Stephen Raslavich

Dated: <u>September 28, 2007</u>      United States Bankruptcy Judge

Interested Parties:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Counsel for Plaintiffs

David A. Scholl, Esquire
REGIONAL BANKRUPTCY CENTER
OF SOUTHEASTERN PENNSYLVANIA
6 St. Albans Avenue
Newtown Square, PA 19073


Counsel for Decision One

Andrew K Stutzman, Esquire
Sean Robert Adam, Esquire
STRADLEY RONON STEVENS
& YOUNG LLP
2600 One Commerce Square
Philadelphia, PA 19103

Counsel for Countrywide

Martin C. Bryce, Jr., Esquire
BALLARD, SPAHR, ANDREWS & INGERSOLL
1735 Market Street
51st Floor
Philadelphia, PA 19103


Counsel for MMS

Allen B. Dubroff, Esquire
7848 Old York Road, Ste 200
Elkins Park, PA 19027

Counsel for Thomas H. Baker, P.C.

John Stanley Stewart
Thomas H. Baker, PC
One Northbrook Corporate Center
1210 Northbrook Drive, Ste. 275
Trevose, PA 19053

3